May it please the Court, I'm Nicholas Acedo, arguing today on behalf of the Appellant's Defendants. I will reserve approximately five minutes for rebuttal. Wal-Mart v. Dukes was a watershed moment for class action litigation. The Supreme Court not only refined the commonality standard, but it reinforced that a class action is an exception to the general rule that should be used only in exceptional circumstances. In certifying 17 alleged practices in a class decision that is not our position, Your Honor. Our position is that the claims as certified in this case do not satisfy the commonality standard. There could be prison condition cases. Sure. Let me start off with commonality. It's no longer valid to certify a class simply because the class members have similar characteristics or raise a common legal theory. Now, commonality requires a common question that can generate a common answer and that the answer drives resolution of the case. The district court in this case certified the practices because all of the class members alleged an Eighth Amendment claim. And therefore, whether their Eighth Amendment rights were violated was a question common to all of them. Plaintiffs urge this Court to uphold certification because all of the classmates are – all of the class members are inmates in ADC custody and subject to the same ADC policies and practices. Therefore, they are exposed to a risk of harm. But none of those arguments pass Wal-Mart's muster. The district court's common question is a clear violation of Wal-Mart because it postulates a legal theory as the glue that holds the class members together. Well, suppose there were a threat in a prison of a fire. Would you need more than that? Where all the inmates would be burned to death if that fire occurred? Could they bring a class action? I believe in those circumstances commonality would likely be satisfied. The harm, the exposure to those inmates would be the same. There aren't individual circumstances that would alter the analysis as to whether there was a violation. Some are closer to the fire than others and have less risk of being burned to death. Well, I'm not sure that a – the closeness to the fire would change the analysis. If there was a – Some would have more – much more risk, the ones that were in the neighborhood where the whole prison might not burn down. But part of it would. Well, let's say – Do the plaintiffs have to be the ones who are closest to the fire? Well, I'm assuming in this hypothetical that there's a policy or practice in place by the prison where, for example, they don't – they don't have any fire extinguishers anywhere in the facility. Under those circumstances, wherever the fire may arise, an inmate could raise a claim for injunctive relief based on that future exposure. And whether they're in Unit A or Unit B, I don't see how that would make a difference. And if there's not adequate health care, not enough doctors in the facility to provide adequate care, wouldn't all the prisoners in the facility have the risk of harm? Well, I think that risk of harm is very speculative. And I – it does – in that instance, it does matter. Each inmate would have a different circumstance. Each inmate – You don't know which one's going to suffer. They all suffer if there aren't enough doctors. You don't know which the individual will be who comes at the end of the line and doesn't get taken care of for 30 days because there aren't enough doctors. Well, I respectfully disagree with that, Your Honor, just because you've got to look at the harm, whether or not any particular – The harm is they won't get proper medical care because there aren't enough doctors. Why isn't that a proper class? You don't know which individuals won't get treated when there aren't enough doctors. But all are at risk of that. Well, the harm isn't the staffing issue. That could be a cause to some constitutional harm, some constitutional violation. Simply because there's only 10 doctors as opposed to 12 doesn't mean that all 34,000 – 10 as opposed to 100. And therefore, when there's a medical problem, Prisoner A gets it. Does he have to wait until he has gotten that injury from lack of care to become part of the class? I think as you get further to, well, let's say zero doctors or one doctor, under those circumstances, it would be a much closer call whether commonality is satisfied, because – What does closer call mean? Are you saying it would or wouldn't be? It would be –  So it's the number of prisoners compared to the number of doctors. If you had an expert report that it's inadequate medical care, or if your own officials had said it was inadequate, would that be enough for the class? I don't believe so, no, Your Honor. Why? Well, if we're dealing with a medical malpractice type claim – No, no, not medical malpractice. Inadequate medical care by not providing enough doctors to take care of the prisoners in the institution. Again, you have to look at whether or not an inmate has suffered a harm as a result of the lack of staffing. Suffered or is subject to suffering harm. Either or. An inmate that has no mental health problems, no mental health history. The fact that there is only one psychiatrist in that facility, there is no risk of harm to that inmate or any future inmates that come into the facility that have no history of mental health. That's a question of subclasses. You're saying that there ought to be a separate mental class for – and a separate other medical care class. Subclassing it out won't solve the problem. Well, I mean, you want to – you say that people who have no history of psychiatric problems, which may be somewhat difficult to determine, but it seemed to me you were arguing that people who are in general medical danger are not in danger because there are fewer psychiatrists. That seems to me you're arguing for a separate class for the people who are – mental disability who don't have enough psychiatrists, as opposed to medical disability for others. That was, I thought, your argument that the class can't be people who haven't already suffered mental disabilities. No, Your Honor. I understand that a risk – a significant risk of a proximate and substantial harm is enough to state an Eighth Amendment claim. But that's all that that is. If an inmate has been harmed, they still have to show that that risk of harm will – will yield a serious medical need that needs treatment. And that's when you've got to shift your focus from the risk to, well, what is the actual need? Is it serious? Is it sufficiently serious? I still don't understand. Maybe it's me. I don't understand what you're saying, because you keep saying sometimes has suffered and other times it's subject to suffering. What is it you want if you had – you gave the example, one doctor for a thousand or ten thousand prisoners? Who would have to file that claim? What would the class consist of? I think in that instance, when if there's just one doctor, the risk of harm is – the magnitude of that harm is so great, and whether it would be obvious to at least most inmates that that would result in some sort of constitutional deprivation. The proper class would be all the inmates in the facility. Alleging a practice of just one doctor? Of inadequate medical care. Well, that's – that's the – An insufficient number of doctors. Those are – those are two different circumstances, Your Honor. I mean, we – Take any circumstance you want. Well – We take the facts. There are 10,000 people in the facility and one doctor. Well, the facts in this case are that there's – No, not in this case. In the case I – in the case I pose to you, that there is a prison. There is one doctor and 10,000 prisoners. What would the class be? In that instance, the class would likely be all inmates – all inmates that are in the facility. And the certified practice – Your basis for saying it's the wrong class is that you don't believe it's a serious enough problem for the number of doctors there now as opposed to the number of prisoners. That's the basis on which you say the class is wrong. Well, not exactly, Your Honor. There are doctors, there are psychiatrists, there are dentists in our facilities. Now – Yes, I understand that, but that's – it's a – it's your ratio that you see that makes it not a proper class. You say we have enough doctors, which is a merits argument. We have enough doctors so that their class is wrong because they haven't established enough of a risk of harm based on what we think is the proper number of doctors. Well, I think we ought – we have to go back to Walmart. And the test is whether they're – Well, Walmart's not exactly the same as a prison case or a civil rights case. You know, Walmart didn't wipe out the traditional prison cases that exist where there are inadequate conditions in a prison that affect all the prisoners. Well, what Walmart did was it refined the test. And if a – if an inmate in a prison wants to certify a class of constitutional claims, it has to satisfy Walmart. Even though Walmart was in Title VII context, the discussion on commonality applies equally to all types of claims. Well, I'm still trying to find out what's wrong about saying I'm a prisoner. We're all prisoners in this institution where they're not providing adequate medical care. It may affect any one of us who gets sick. We don't know who's going to be harmed by the inadequate number of doctors. I just don't understand your theory, because you say, yes, if there were no doctors, if there were two doctors, it would be a proper class. But if we really have 30 doctors and there are 500 prisoners, then there's no class, because we think we have an adequate number of doctors. I just don't see how that's a class question other than a merits question. Well, if there were zero or one doctors, I think it's safe to say that no inmate would be getting any type of treatment for any type of condition. But when you have a facility that does have doctors and the allegation is that it is not adequate or that it's not sufficient, you have to look at, well, there are staff members, there are doctors on staff. Well, what is the constitutional harm that results from that cause? And you've got inmates with a hangnail or that need a filling. You're really saying you want us to decide the merits at the time of the class. We should say, yes, they do have an adequate number of doctors. No. I'm not asking that at all, Your Honor. You have to look at what you assume there are an inadequate number for purposes of class certification. No, you cannot assume that. You cannot assume that. But does that mean we have to determine whether they're an inadequate number before we get to the class? All you have to determine for purposes of class certification is whether there's a common question that can be answered in one stroke. And with the type of Eighth Amendment health care claims and conditions of confinement claims in this case, you can't pose a question where the answer to that question is yes or no. Does the level of staffing at ADC right now, does that violate these inmates' Eighth Amendment rights? That's a question that the district court certified and that plaintiffs rely on. You can't say yes or no to that question. We didn't answer it. We just say that's the question we have to do. But as far as whether the commonality of the question, I just don't understand why it's not a common question, because any prisoner, every prisoner in prison suffers the same risk. Now, I can understand you saying there is no risk. There's no constitutional violation. That we get to much later in the case. They don't suffer the exposure to risk. I don't want to pick up on your challenge, sir. Well, this is important. The exposure to risk is not the same for all of the inmates. Inmates have different health conditions. Inmates need different treatment. Inmates have different dental needs, different mental health needs. One of them may get appendicitis, but you don't know which one's going to get appendicitis. The ones with the medical problems don't know what medical problems they're going to have. Their claim is when they do have a medical problem, there won't be enough doctors. I completely understand your argument on the merits. I just don't understand how you're supposed to test the inadequate conditions in a prison other than through a class action of all the prisoners who may be affected by the inadequate conditions. We can't look at it as how can we best reform the institution. The responsibility of the Federal courts is to address constitutional violations. And if an inmate feels that their or believes that their constitutional rights have been violated, that they had to wait two weeks to get a routine teeth cleaning. If they feel that that amounts to a constitutional violation, they can sue. And they will have to show that that delay, in fact, caused them sufficient harm, rising to the level of an Eighth Amendment violation. But the question is not how can we address all of these claims in one lawsuit? The question goes back to Walmart, which is what is the common question, and is that question answerable in one stroke? Kennedy wrote for the majority in Plata, where he said, Plaintiffs rely on system-wide deficiencies in the provision of medical and mental health care that, taken as a whole, subject sick and mentally ill prisoners in California to substantial risks of serious harm, and cause the delivery of care in the prisons to fall below the evolving standards of decency that mark the progress of maturing society. Isn't that exactly the same as what plaintiffs are saying here? Your Honor, in Brown v. Plata, Justice Kennedy was acknowledging the scope of the constitutional violation that had already been found and stipulated to in that case. And it was important to acknowledge the scope of the constitutional violation, because the actual issue before the Court was whether or not the release order, the remedy, was narrowly tailored to that violation. The issue before the Court, it had no occasion to consider whether anyone's constitutional rights were violated. Liability was not an issue. That was the question. Kennedy, but who could bring the suit was the question. I said, you know, on liability, when we get to liability, you know, I can only go back and I can understand your argument, and I'm not proposing we adjudicate liability. I'm proposing how you test prison conditions. If there are inadequate prison conditions, how would you propose that they be? And unconstitutional. How would you propose that they be tested? Is it after somebody gets ill, he must file a suit and test it in an individual case? Or can there be a class to test it, those who face the risk of harm? An individual could raise a lawsuit alleging a significant risk of proximate substantial harm for injunctive relief. They might not — that harm might not have actually occurred yet, but they — under Helling, they can raise that claim. But they still have to go further than that. They still have to go further and establish the objective and subjective prongs of an Eighth Amendment violation. And that's where you get into the individual differences. Whether — whether this inadequacy or that inadequacy resulted in a serious deprivation of a serious medical need, that will differ from inmate to inmate, based on the individual circumstances. Kennedy, who gets a — has a problem with the general conditions, has to file his own individual case as he gets harmed, and no challenge can be made to the general conditions. Well, I see I'm at a minute and a half. I'd like to reserve — We'll give you your full time for rebuttal. Okay. You wanted to say five minutes. We'll give you the five minutes. Thank you. I'm sorry I monopolized this discussion, if you could call it a discussion. Inquisition might be the word. That's okay. But — but you're posing — your questions center around, well, how else can they do this? But that — that's not the inquiry. The inquiry is, with the claims that are before the court, the class claims, can those be answered in one stroke? It all goes back to Walmart. And with the — with the class that was certified here and the alleged practices that were certified, 17 of them, there's not one of those questions that were certified in this case. There might be other — other practices or policies, Eighth Amendment claims, that can be certified in a proper case. I'm sure — I'm sure there are. But in this case, the claims in this case don't satisfy Walmart. And that's as far as this Court has to go. This Court doesn't have to post hypotheticals or draw the line in when is enough and when is not enough. It can just look at what the district court did here and — Are you aware of any case in which we have ever decertified a class that the district court has certified? In any context? Yeah. Well, the Wang case, the recent Wang case, it vacated that commonality finding. That was just last month, a few months ago. And it's sent it back because in Wang, the court, similar to the district court here, said that there's these policies and practices and that the class members are all subject to the practice. Is that a case you're relying on, Wang? I'm sorry? Is that a case you are relying on? That is a case, yes. Okay. Well, we'll give you the full five minutes. Thank you, Your Honor. Maybe somebody else will have a question. May it please the Court. I am David Fati for the plaintiff class. The district court in this case found significant proof that the Arizona Department of Corrections is operating under a policy of providing deficient health care. It found that the problems identified in the provision of health care are not merely isolated instances, but rather examples of systemic deficiencies that expose all inmates to a substantial risk of serious harm. It found that plaintiffs had shown systemic deficiencies at all 10 ADC facilities. It found that the department's practices or customs in the provision of health care arise to the level of deliberate indifference that places inmates at a substantial risk of serious harm. And it found that abundant evidence soundly supports the conclusion that commonality exists among the class and subclass members. The defendants don't identify a single one of the district court's findings that they allege to be clearly erroneous. The district court did not abuse its discretion in certifying the plaintiff class, and its findings were not confirmed. Now the district court made these findings based on a massive evidentiary record consisting largely of the department's own documents, including a statement by the department's mental health director that psychiatrist staffing is grossly insufficient and so limited that patient safety and orderly operation of ADC facilities may be significantly compromised. The district court also had before it the department's November 30, 2012, staffing report showing significant staffing shortages at all 10 prison complexes, with vacancy rates of over 50 percent for psychiatrists, physicians, nurse practitioners, and dentists. Roberts, let me ask you, I mean, I have a bunch of questions, actually, about the way this certification order was framed. But since you touched on the mental health issues, maybe we can start there. I guess these are Practices 9 and 10 on page 22 of the order? Yes, Your Honor. You don't think you need a subclass for the mental health-specific issues? No, Your Honor. In the complaint, as we filed it, we did initially have a subclass for mental health. But as it as we got into discovery, it became clear that there was really no clear demarcation between mental health and other parts of the case. For example, many of the, to stay with staffing shortages for a moment, shortages in nurses, shortages in medical records staff, the lack of a functioning medication distribution system, the lack of reliable medical records, those affect mental health just like they affect physical health. And so while a subclass would be proper, would be permissible, we decided that the subclass would address all aspects of health care that we did not see the subclass. Well, okay, but I mean, I don't know. I guess Condition, I mean, Practice 10, which involves only those who are suicidal and prone to harm themselves, you think that every single inmate kind of falls into that category? Well, not every single inmate, Your Honor. But as Judge Reinhart was saying, we don't know now which prisoners will at some point attempt to harm themselves or attempt to commit suicide. Certainly in a prison population, self-harm and suicide is far, far higher than the general population. Well, I'm sure that's right. I mean, I guess I understand your point about maybe general practices that cut across mental health, you know, just regular health care with respect to records keeping, prescriptions and the like. But if it's specific to inmates who have a certain condition, then I would assume you'd need a subclass to, you know, isolate the practice that applies to them. Again, Your Honor, I think that that would be permissible but not required because of, again, the multiple deficiencies that cut across all aspects of health care. Well, let's look at some of these other ones. I guess my basic problem with the way this order is framed, so help me with this. Is that there are none of these so-called practices is framed with enough specificity to lend itself to injunctive relief at the end of the day. I mean, failure to provide timely access to health care, I don't even know what that means. I understand what it means if you say, District Court, these people provide ten doctors for every 10,000 inmates and we think the constitutionally minimum required number is 100. Okay. I can see what the injunction would look like. I don't know what the injunction would look like for failure to provide timely access to health care. Well, Your Honor, we don't need to specify the what the injunction would look like at this case. And at this point of the case, and the district court considered that argument and specifically found that we had in our complaint framed our injunction with enough specificity for the class certification stage. I might add that the defendants rely heavily on the Shook case from the Tenth Circuit. That talks about the requirement that somehow Rule 65d plays a role at the class certification stage and requires a certain level of specificity in the proposed injunction. That is, with all due respect, an invention of the Tenth Circuit. This Court has never applied Rule 65d at the class certification stage in considering whether the requirements of Rule 23b2 are satisfied. Nevertheless, the district court gave the defendants the benefit of the doubt, applied Shook to, applied the 65d requirement, and found that it was satisfied. Well, I'm saying that I'm not satisfied. And help me understand how this just take the first condition. How does that lend itself to any conceivably specific enough injunctive relief? Just the first. Just take the first. Pick any one you want, actually, but take the first one. Okay. Since it's first. Certainly, Your Honor. There are professional standards with regard to when, how quickly people, a prisoner asking for health care should be seen. And so given that, let me back up a step. Under the Supreme Court's decision in Casey v. Lewis, first of all, the defendants must be given the first opportunity once a constitutional violation is found to formulate an adequate injunctive relief. So they would have the first opportunity. Hang on a second, because I'm with you 100 percent. If I don't think Shook to, if it said this, I don't think it should be followed here. I'm not saying that you have to come forward and say, Your Honor, here are the terms of our 65d injunction right now. You certainly don't have to do that at the class certification stage. But I think you would agree that you do need to identify practices that are specific enough that we can at least conceive of what some adequate injunctive relief would look like at the end of the day, right? Yes, Your Honor. And these are detailed in the – with great specificity in the evidentiary material that's before the Court. Our experts explain exactly what is meant by failure to provide timely care, provided multiple examples, again, in many cases relying on the defendant's own documents that confirm that timely care isn't being provided. And I think, you know, the – the expert declarations are an important part of this case. These are medical professionals with decades of experience in evaluating prison and jail health care. And they reviewed the depositions of the defendants. They reviewed the defendants' documents. They reviewed records. And they concluded that these practices pose a substantial risk of serious harm. And now the defendants could have asserted an evidentiary objection to those experts. They could have put forth their own experts. They did not. And the Court was certainly entitled to credit unroboted expert evidence from credible experts. Well, okay. Let me maybe just try to be clearer in my concern. I'm sorry, Your Honor. I don't have any issue with the evidence you've brought forward. It's an impressive body. I agree. My concern is how can we just affirm this class certification order in the form that it's in now? That's – I'm just – I would have envisioned, I guess, something much more specific in terms of the – I mean, again, the classic one to me is the level – the staffing level, as opposed to just failure to provide timely access to health care. So just – I mean, do we have cases that have upheld certification orders that were the practice's challenge, were framed in terms this vague? I can't think of a case right now, Your Honor. But I can tell you that, you know, that is – that is the way these cases typically work. And I think it's because two things. Number one, the Court relies on the parties' experts to give content to – to things like – to concepts like timely access to health care. And secondly, because the defendants have the first opportunity to promote – to propose a remedy. Let me give you an example for – with regard to – to failure to provide adequate staffing, if I may. The American Psychiatric Association recommends one full-time equivalent psychiatrist for every 150 prisoners who are on psychotropic medication. So that's an example. That's a concrete standard that the district court could direct the defendants to comply with. Mm-hmm. Okay. I agree. But that's not how this is framed. That's my problem. We – don't we need something that specific? You're challenging the practice of providing only one, you know, psychiatrist per 100 inmates. That's practice number one. Practice number two, you know, something that specific so that we can match it up to potential injunctive relief at the end of the case? Your Honor, I'm not aware of any authority that that – that level of specificity is required. The only authority I'm aware of is – is the defendant's citation of Shook II, which, again, this Court has never applied the Rule 65e requirement at the class certification stage. Nevertheless, the district court did go through that inquiry and – and determined that the injunctive relief we had proposed in our complaint was sufficiently specific at this point. What if we were ultimately not convinced that one or more of these, you know, I don't know, 10, I guess there's 17 total when you count the subclass, weren't adequately specific at this stage? What would – what would we do? Would we vacate the order and send it back, or would we just say, you know what, it doesn't matter as long as you've got one and the district court decided to follow up later? Well, Your Honor, it has long been the law, and Wal-Mart certainly reiterated that a single common question is – is sufficient for class certification. So I believe the Court could affirm, the Court could – could modify the class certification, the phrasing of some of these issues and affirm as modified. I think that vacating on that basis would be, you know, a tremendous waste of judicial resources. I think that the Court should affirm or – or affirm as modified if it's going to be – if it has those concerns. Now, defendants, they – with – they retreat from it today, but they say in their brief very clearly, they argue for an extreme position that neither this Court nor any court has ever endorsed, that class certification is categorically unavailable in an Eighth Amendment case. This is inconsistent with the Supreme Court's decision just two years ago in Plata, as well as a long line of this Court's cases in which Eighth Amendment class actions have been litigated to final judgment. It's also inconsistent with the many cases since Dukes in which courts have certified Eighth Amendment classes, and we cite many of those in our brief. And as the amici point out, accepting the defendants' arguments would bar class actions not only on behalf of prisoners, but also children in foster care, immigrants in detention, and many other populations in government custody. The defendants' arguments on appeal rest on several fundamental misunderstandings. First is their failure to recognize that the plaintiffs' Eighth Amendment claims in this case are based on a risk of future harm. Now, the defendants fixate on the injuries suffered by the named plaintiffs in the past, and they argue that differences among those injuries defeat class certification. But the plaintiffs' past injuries, although they are real and they are serious, are not the constitutional violation at issue in this case. The constitutional violation is a substantial risk of future harm, as the Supreme Court said in Helling v. McKinney. Roberts. Right. But you need to tie that to some system-wide policy, right? I mean, you agree that it's not enough if, you know, five inmates from five different facilities come forward and just, you know, hey, this happened to me, and I allege that that violated my Eighth Amendment rights. That's not going to provide a common question. You've got to tie it. You've got to say, well, these aren't just isolated incidents, because they all stem from this common policy that starts up here, right? Well, yes. And that's exactly what the district court found. And again, a finding not challenged is clearly erroneous, that there is a policy of providing deficient health care, and the problems identified are not merely isolated incidents, but rather examples of systemic deficiencies that expose all inmates to a substantial risk of serious harm. So the district court specifically found that the risk is class-wide. It's not limited to the named plaintiffs. The reason that the named plaintiffs' past injuries are relevant is not because they give rise to the risk, not because they're what gives rise to liability, but because they show that the plaintiffs are at risk of harm in the future, and it's that risk that violates the Eighth Amendment. Right. But the common question, it seems to me, has to be framed in terms of the system-wide policy, right? That's what's going to generate common answers for everybody. I'm challenging policy X at the system-wide level. Here are at least my individual examples of the kind of harm that that policy is generating. But at the end of the day, district court, I want you to determine whether this policy violates the Eighth Amendment, right? Correct. Correct, Your Honor. And let's talk about, as an example, the policy of providing the level of health care staffing that they provide. Now, Mr. Asado conceded that if the prison system just provided no doctors, commonality would be satisfied and the class could be properly certified, and that concession is fatal to their commonality argument. First of all, I will point out, just as a matter of fact, there are Arizona prisons where there are no doctors. But more fundamentally, the situation that we are talking about today is different from the no doctor situation only in degree, not in kind. We claim we allege that the health care staffing is grossly insufficient to care for the needs of the prisoners. The defendants disagree. Whatever the answer is, the answer is going to be the same as to the entire class. And that's what satisfies the commonality requirement. Right. But that's, I guess, again, just coming back to my problem with the way this order is framed, I would have expected it to be framed in terms of the system-wide policy that you guys are challenging. Well, it is, Your Honor. I mean, if you look at the certified practices, one of them is … I can't find the staffing. Well, it's four. Thank you. Insufficient health care staffing. Right. That sounds great. I mean, that I can understand. But these other ones, I mean, the failure to provide timely access to medically necessary specialty care, I mean, again, I — so what's the system-wide policy that you're … The system-wide policy there, Your Honor, is that the prisoners' access to outside medical providers, specialty providers, is centrally controlled by one or two people in the central office. And so any delays, deficiencies, dysfunctions in that system are common to the entire class. The defendant's second fundamental misunderstanding is their erroneous belief that the only way to show a systemic Eighth Amendment violation is through an aggregation of individual Eighth Amendment violations. They say this very clearly at pages 9 and 10 of their reply brief. The cases they cite for this proposition say nothing of the kind, and it's just incorrect. As Judge Reinhart pointed out, the Supreme Court said two years ago in Plata that plaintiffs can establish a systemic violation in prison health care without showing a constitutional violation in the case of any individual prisoner by showing systemic deficiencies that subject prisoners to a substantial risk of harm. And that's exactly what we have here. And this Court said in Armstrong v. Davis that systemic relief is required if the injury is the result of violations of a statute or the Constitution that are attributable to policies or practices pervading the whole system, even though injuring only a relatively small number of plaintiffs. And so in Armstrong, this Court affirmed a systemwide grant of relief in the California prison system based on the injuries suffered by only 17 prisoners because those injuries stemmed from systemwide policies and practices. And that's exactly what we have here. So the defendant's central premise, that we will have to show hundreds or thousands of individual Eighth Amendment violations to secure a remedy for systemic problems like chronic understaffing and a dysfunctional medication distribution system, is just incorrect. Finally, the defendant seemed to believe that Arizona is not in the Ninth Circuit. They placed decisive reliance on cases from the Fifth, Tenth, and D.C. circuits, but managed to almost completely disregard this Court's substantial body of class certification precedent, both before Dukes and since. The district court's findings are not clearly erroneous, and it did not abuse its discretion in certifying the class. The class certification order should be affirmed, if the Court has concerns. Thank you, counsel. Thank you. In Wal-Mart, the plaintiffs argued that they were all employees subject to the same practices that resulted in discrimination. The dissent in Wal-Mart, which garnered only four votes, said that was enough. The majority of the plaintiffs argued that the majority in Wal-Mart said it's not. You don't look at whether there's a common legal theory or whether individuals are subject to the same practices. You've got to dig deeper, and you've got to ask whether there's a common question that can be answered in one stroke. If you look at the cases that preceded, this Circuit's cases that preceded Wal-Mart, look at some of the common questions that were upheld on appeal. In Wollin v. Jaguar Land Rover, whether a vehicle's alignment was defective and whether the manufacturer was aware of the defect, that's a yes or no question. Rodriguez v. Hayes is a due process case. Whether an individual can be detained for over six months without a bond hearing, that's a yes or no question, whether that violates due process. After Wal-Mart and Abdulla, just recently, the Court looked at California's labor laws. The common question was whether a security company can lawfully adopt a single-guard staffing model that does not allow for off-duty meals and still raise their nature of the work defense. That's a yes or no question. There isn't a yes or no question in any of the certified practices that the district court certified in this case. If you look at what the plaintiff's claims are, there's five claims, inadequate health care, inadequate medical care. A certified practice was whether staffing was inadequate. But you have class representatives who allege inadequate medical care not because of inadequate staffing, but for other alleged deficiencies. One class rep alleged that a nurse improperly inserted a catheter in his urethra. Another class representative asserts that he was given expired eye medication. A lot of the class representatives allege that their medication was abruptly discontinued even though it was helping them or it was changed. Those types of medical care claims and, again, you look at the claims, have nothing to do with staffing. So how can you say that inadequate staffing is a glue that holds all of the class members' claims together? It doesn't. Judge Watford, I think we're on common ground here that the district court's order was incredibly broad and incredibly vague, and I think some of your concerns, I believe, touch on commonality, but I think where you were going is they really touch on 23b-2. And you've got terms like sufficient and timely and necessary and reliably and competent. There is no – I mean, those are contentless words that have no defined meaning. As a defendant that's at the other end of this injunction that's supposed to comply with that, how are they supposed to know what is adequate? They cite to professional standards, but that's what you have to do. You have to have a trial for it. You know, you go through in a prison case, you go through, you give the general problems that there are, and you work out what the specifics are with the testimony in the case. You see what the State is willing to correct, and at the end of a trial, you see what specifically the injunction is going to say, depending on the evidence. But at the beginning of the class, you don't know exactly how inadequate staffing is incorrect, what the facts will be. Maybe it will turn out that the staffing is proper when all the evidence is in. But you don't know. You do know that there's not enough staff to avoid all of the problems that are occurring in the prison system, and you have experts who tell you that in advance. What the specifics of the injunction will be will depend on the evidence that is developed. You can't know at the beginning of a class what the specifics of the injunction are going to be. And we're not asking for specifics, and I don't think Rule 23b2 requires specifics. But as Judge Watford, as you acknowledge, there has to be some conceivable remedy here. And what's not why is there no conceivable remedy? Once you find out that there's inadequate staffing or there's an inadequate time, inadequate records, or what is it that you feel? We'll let Judge Watford make his argument later to us. But what is it that you find that you – in the proposed injunction or the suggested general terms of the injunctions, what is it you find an abuse of discretion? Well, I think at the outset, at the class certification stage, you have to determine whether or not an injunction is conceivable at the end. And here, Judge Wake, the district court judge, essentially said, I can issue an injunction that's so broad and so over – But tell me why. Don't say it's so broad. What is it that you think the terms cannot be conceived of at the end of a trial? What specifically? We don't know because we don't know what plaintiffs conceive. What point in there that the district court has listed? What is an abuse of discretion? Well, it's an abuse of discretion to find that an injunction ordering timely access to health care is sufficient. Okay. So if during the trial it turns out that the time for access is 3 months and every expert comes in and tells you it shouldn't be more than 1 month, then you'll know It's not that you have to know now. You have to be capable of conceiving what the order may be. So after the trial, you establish that timeliness means 1 month. Then you'll know when the judge issues the final injunct, that you have to do it within 1 month. That's not so hard to figure out. It's not that the terms now have to be specific. It's that you have to be able to conceive of an injunction that can emanate from this because you have evidence. I think you run into another problem. If you just rely If an expert comes in and says 1 month is what I think. No, not 1 month. I said, all right, 20 experts come in, and the prison administrator says that's right, then you can conceive of an injunction? If it's a If it's what a trial is about. If the injunction says 1 month, you're going to have inmates that receive care in less than 1 month, but they're getting Nobody's prohibiting that. All I say is an inmate. The evidence shows that what's timely is 1 month. If you get it in less than a month, you give the prison administrator a kiss. But if you get it more than 1 month, you're violating the injunction. I don't see what's so difficult to understand. Well, you've got an injunction that says 1 month, but what if you have an inmate that received care 1 month and 1 day, but yet he didn't suffer any harm? There can be no rules about what timeliness is. You're not saying we don't say what timeliness is. You're saying there is no such thing as timeliness. What we're saying is that it's a contentless standard that has no meaning, and at this stage of the litigation, they have to come up with something where a judge can conceive conceivably or can conceive of an injunction that He can conceive of an injunction that spells out what timeliness means. Well, the district court judge here said that the way that he ordered it, that that was sufficient. And our position is, is that is an abuse of discretion under Wal-Mart and Shook too. Okay. Thank you. All right. Thank you. Now we go to the case. The case is argued to be submitted.
judges: Reinhardt, Noonan, Watford